PEOPLE v POTRA

Docket No. 121107. Submitted June 4, 1991, at Lansing. Decided
    October 8, 1991, at 10:00 A.M.

  Samuel Potra was convicted by a jury in the Oakland Circuit
    Court, Steven N. Andrews, J., of conspiracy to deliver and
    delivery of 650 grams or more of cocaine. The convictions arose
    out of a drug sale arranged by John Poppa after he had been
    arrested for his participation in another cocaine sale and had
    indicated that the defendant was his source of cocaine. The
    defendant appealed.

    The Court of Appeals *held:*

    The trial court correctly held that the search of the defen-
  dant's automobile was proper despite the failure of the police to
  secure a search warrant to monitor the conversations between
  Poppa and the defendant and the failure to secure a search
  warrant before searching the automobile that the defendant
  had been driving. The court also correctly held that the defen-
  dant was not entrapped and was not entitled to assert the
  procuring-agent defense.

    1. Because the police had in Poppa an independent source of
  the information exchanged by Poppa and the defendant in their
  telephone conversations, the exclusionary rule was not applica-
  ble even if the monitoring of those conversations was illegal.

    2. The police had probable cause to believe that evidence of a
  crime would be found in the trunk of the defendant's automo-
  bile; accordingly, no search warrant was necessary to search
  the trunk of the automobile.

    3. While the defendant may have been induced to become
  involved in drug dealing because of his friendship with Poppa,
  any such inducement took place before the police sought to
  have Poppa arrange the cocaine purchase that resulted in these
  convictions. The record supports the trial court's conclusion
  that neither the police nor Poppa did anything to improperly
  induce the defendant to commit a crime that he was not
  already willing to commit.

    4. The procuring-agent defense is not available to a person

REFERENCES
Am Jur 2d, Criminal Law §§ 202-209.
See the Index to Annotations under Criminal Law.

charged with delivery of a controlled substance pursuant to the controlled substances provisions of the Public Health Code.

5. To the extent that his friendship with Poppa induced the defendant to sell more cocaine than he would have sold otherwise, he was not thereby prejudiced in view of the fact that each of the defendant's prior sales to Poppa had been for amounts greater than the 650 grams necessary to expose the defendant to the maximum penalty.

6. Defense counsel not only failed to object to testimony concerning the prior cocaine transactions between the defendant and Poppa, but also used that testimony to attack Poppa's credibility; accordingly, the defendant may not now claim as error the admission of that testimony.

7. Civic duty remarks by the prosecutor during closing argument did not deny the defendant a fair trial.

Affirmed.

CONTROLLED SUBSTANCES — DELIVERY — DEFENSES — PROCURING AGENT.

The procuring-agent defense is not available to a person charged pursuant to the provisions of the Public Health Code with conspiracy to deliver or delivery of a controlled substance.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *Richard Thompson,* Prosecuting Attorney, *Michael J. Modelski,* Chief, Appellate Division, and *Richard H. Browne,* Assistant Prosecuting Attorney, for the people.

*Richard M. Lustig,* for the defendant.

Before: CAVANAGH, P.J., and HOLBROOK, JR., and W.P. CYNAR,* JJ.

PER CURIAM. Defendant appeals as of right his convictions by jury of conspiracy to deliver and delivery of 650 grams or more of cocaine. MCL 333.7401(2)(a)(i); MSA 14.15(7401)(2)(a)(i) and MCL 750.157a(a); MSA 28.354(1)(a). He was sentenced to two mandatory terms of life imprisonment without parole. We affirm.

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

In August 1988, John Poppa was arrested for selling two kilograms of cocaine to an undercover police officer. Poppa agreed to cooperate and give the police information about his drug dealing in return for reduced charges against Poppa's wife, who had also been arrested. According to Poppa, his source for the cocaine was defendant, whom he had known as a boy in Romania and whose family he had stayed with in Rome when he immigrated to the United States from Romania in 1979.

From 1980 to 1987, Poppa had talked with defendant approximately four or five times. Poppa began dealing drugs in 1987, when he moved back to Detroit and was desperate for money. Over Memorial Day weekend in 1988, Poppa went to California and dropped in to see defendant at his business. Poppa told defendant that he was looking for a cocaine connection. Defendant said that he could not sell Poppa cocaine because he did not deal with it; he repaired cars for a living. However, when Poppa asked whether defendant knew of anyone else, defendant told him about a Keith Williams, who had approached defendant a couple of weeks earlier with five or ten kilograms. Defendant introduced Poppa to Williams and, because defendant did not want to be involved, he went back to his own car. However, at the end of their conversation, Williams told Poppa that, because he did not know him, the only way he would supply Poppa with cocaine was through defendant. Over the next few months, until Poppa's arrest in August 1988, Poppa went to California and bought kilogram amounts of cocaine from defendant at his place of business.

In September 1988, as a result of his agreement to cooperate with the police, Poppa called defendant and told him he wanted to purchase four or five kilograms of cocaine. At the direction of the

police, Poppa told defendant that he could not afford to go to California for the drugs, so defendant would have to bring them to Michigan. During the course of several telephone conversations over the next few days, defendant agreed to bring Poppa the cocaine.

Several days later, arrangements were made for Poppa to meet defendant and defendant's fiancee, Lisa Gara, at a Chinese restaurant at Fifteen Mile Road and Stephenson Highway. The police determined that defendant had called from a public telephone in Troy, Michigan, and surveillance officers in the area saw and followed defendant's brown Mercedes-Benz for approximately two hours, until he dropped off Gara at the Chinese restaurant. Meanwhile, a police officer drove Poppa to a location near the restaurant, where Poppa was given his own car to drive. As instructed, Poppa drove to the Chinese restaurant, followed by surveillance officers, where he met Gara. Gara handed Poppa a note, written in Romanian, which said:

> John, come with Lisa. She's going to bring you to a restaurant and she's going to give you directions in Romanian how to get there. I did this because I don't know who your customers are, who you arranged these things with, and then I'll see you there. It's a public place without no problems.

They got into Poppa's car and Gara directed him, in Romanian, to a nearby parking lot north of Hudson's in the Oakland Mall. Less than a minute after Poppa parked his car, surveillance officers saw defendant park his Mercedes nearby. Gara and Poppa got out and went to the rear of his car, and, as Gara instructed, Poppa opened the trunk.

At about the same time, defendant got out of his car, walked toward the left rear tire, and, as he appeared to bend over to tie his shoe, reached up to the top of the tire. Defendant then walked into the Hudson's store and stood between the two sets of glass doors, looking out. Gara asked Poppa for the money, and, when Poppa indicated he did not have any money, she told him he would have to talk to defendant. She told Poppa to go inside the mall, and, as he went in that direction, she walked over to the left rear tire of defendant's Mercedes, bent over, stood up, and went to the driver's side door. After she opened the car door, she was arrested. After defendant was located in the parking lot on the other side of the mall, he was also arrested. The key to the Mercedes' trunk was found on top of the left rear tire.

A police dog that was brought to the scene indicated that there was the scent of drugs in the trunk of the Mercedes. A search warrant was obtained, and four parcels containing a total of 3,885 grams of cocaine were found in a nylon bag in the trunk.

First, defendant claims that the search of his car was improper because the police had failed to obtain a warrant for the tape recording of several conversations between Poppa and defendant, defendant's car was searched before a warrant was obtained, and there were factual misstatements in the affidavit in support of the search warrant.

Defendant argues that in the absence of a warrant to record Poppa's conversations with him, the use of information from those tape recordings to establish probable cause to arrest him and search his car constituted the use of fruit of the unlawful recordings and was in violation of *People v Beavers*, 393 Mich 554, 562, 566-567; 227 NW2d 511

(1975), cert den 423 US 878 (1975).[1] However, we need not address the lawfulness of the recording of those conversations, because the police had an independent source of the information contained in the conversations between defendant and Poppa —Poppa himself. Testimony at the suppression hearing indicated that the officers not only listened to the tape recordings, but also discussed the telephone conversations with Poppa after the conversations ended. There is no illegality in a participant to a conversation providing information, and testifying, concerning the contents of the conversation, whether illegally monitored or not. See *People v Tejeda (On Rehearing)*, 188 Mich App 292, 297-298; 469 NW2d 77 (1991). The exclusionary rule is not applicable when the government learns of evidence from an independent source, *Segura v United States*, 468 US 796, 805; 104 S Ct 3380; 82 L Ed 2d 599 (1984), or inevitably would have discovered the evidence regardless of the unconstitutional conduct, *People v Kroll*, 179 Mich App 423, 428-429; 446 NW2d 317 (1989). Therefore, the trial court's decision not to exclude the cocaine because of the monitoring and recording of the conversations without a warrant was not an abuse of discretion or erroneous. See *People v Romano*, 181 Mich App 204, 213-214; 448 NW2d 795 (1989).

Defendant also contends that the search of the car before obtainment of the warrant was unlawful. However, the automobile exception to the search warrant requirement allows searches of automobiles when there is probable cause to believe that evidence of a crime will be found in a lawfully stopped vehicle. *United States v Ross*, 456 US 798, 807-808; 102 S Ct 2157; 72 L Ed 2d 572 (1982); *People v Anderson*, 166 Mich App 455, 478-

---

[1] We recognize that *Beavers* has since been overruled. *People v Collins*, 438 Mich 8; 475 NW2d 684 (1991).

479; 421 NW2d 200 (1988). Defendant argues that the trial court erred in determining that there was probable cause to justify the search. However, the conversations between defendant and Poppa regarding the plan for a drug sale, Gara's actions in meeting Poppa alone and directing him to the mall, defendant's parking nearby and moving away from the vehicle into the store after surreptitiously leaving the key to the vehicle on the rear tire, and Gara's immediately locating the key where defendant had left it all provided probable cause to believe that a drug deal was occurring. Under these circumstances, no search warrant was necessary for the police to open the trunk of the car.

Defendant's argument that the affidavit on which the search warrant was based was insufficient and misleading is rendered moot by the finding that no warrant was necessary to search the car.

Second, defendant claims that he was entrapped into committing the charged offense by the police and Poppa taking advantage of the personal relationship between Poppa and himself. He also argues that the procuring-agent defense should have been available to him and that he was wrongfully induced to participate in an offense of greater magnitude than he would have been involved in had he not been entrapped.

An appeal by police because of friendship or sympathy rather than for personal gain is an example of police conduct that would constitute entrapment. *People v Jamieson,* 436 Mich 61, 73-74; 461 NW2d 884 (1990) (BRICKLEY, J.). Here, Poppa may have induced defendant into becoming involved in drug dealing on the basis of their past friendship, but he was not acting as an agent for the government when he did so. It was only after

defendant had sold Poppa large quantities of cocaine several times that Poppa sought to purchase drugs from defendant at the behest of the police. In addition, Poppa testified at trial that he thought defendant made money from the drug transactions and that, with regard to the last sale, defendant admitted he was going to make about $4,000 or $5,000 per kilogram of cocaine. Thus, the record supports the trial court's conclusion that the police and Poppa, as their agent, did not pressure defendant into selling drugs and that the conduct of the police was not reprehensible or of a kind that would induce or instigate the commission of a crime by one not ready and willing to commit it, regardless of the character or propensities of the particular defendant. *People v Turner,* 390 Mich 7, 21; 210 NW2d 336 (1973); *People v Rezendes,* 164 Mich App 332, 334; 416 NW2d 436 (1987).

Defendant also argues that he was entitled to raise the procuring-agent defense recognized in *People v Turner,* 38 Mich App 479, 487; 196 NW2d 799 (1972), rev'd on other grounds 390 Mich 7; 210 NW2d 336 (1973). However, in *People v Williams,* 54 Mich App 448, 449-450; 221 NW2d 204 (1974), a panel of this Court concluded that this defense was abrogated with the repeal of the Uniform Narcotic Drug Act, MCL 335.152; MSA 18.1122, by the Controlled Substances Act of 1971, MCL 335.301 *et seq.*; MSA 18.1070(1) *et seq.*, particularly by MCL 335.304(1); MSA 18.1070(4)(1), which provided:

"Deliver" or "delivery" means the actual, constructive or attempted transfer from 1 person to another of a controlled substance, whether or not there is an agency relationship.

See also *People v Collins,* 63 Mich App 376, 382-

383; 234 NW2d 531 (1975); *People v Cancino,* 70 Mich App 90, 97; 245 NW2d 414 (1976); *People v Harrison,* 71 Mich App 226, 228; 247 NW2d 360 (1976), aff'd sub nom *People v Kamin,* 405 Mich 482; 275 NW2d 777 (1979).

The Controlled Substances Act of 1971 was repealed by the Legislature's adoption of the controlled substances provisions of the Public Health Code, 1978 PA 368, effective September 30, 1978. However, MCL 333.7105(1); MSA 14.15(7105)(1) of the new act defines the terms "delivery" and "deliver" word for word the way they were defined in the repealed MCL 335.304(1); MSA 18.1070(4)(1). We find that the language of § 7105(1) clearly abrogates the procuring-agent defense, consistent with the *Williams* Court's determination that MCL 335.304(1); MSA 18.1070(4)(1) of the prior act abrogated that defense. Therefore, defendant was not entitled to offer the procuring-agent defense to the charges against him of delivery and conspiracy to deliver controlled substances.

Defendant's final argument regarding his entrapment claim is that he was wrongfully induced to participate in an offense involving a greater amount of drugs than he would have been involved with absent the impermissible actions of the police and the informant. Before acting as a government agent, Poppa bought cocaine from defendant four times: on three occasions the amounts were one kilogram, and on one occasion the amount was two kilograms. Therefore, defendant, well before Poppa became an agent of the police, was clearly dealing in quantities in excess of the 650 grams of cocaine for which he could receive the maximum sentence under Michigan law. See MCL 333.7401(2)(a)(i); MSA 14.15(7401)(2)(a)(i). Consequently, any police encouragement of defendant to sell even more cocaine did not result

in his exposure to a greater penalty than he had been exposed to before the police became involved.

Third, defendant claims that the trial court improperly allowed evidence of other offenses, namely, testimony regarding the prior cocaine transactions between himself and Poppa, to be introduced into evidence, contrary to MRE 404(b). However, defense counsel failed to object to this testimony, which precludes appellate review absent manifest injustice. See *People v Furman,* 158 Mich App 302, 329-330; 404 NW2d 246 (1987); *People v Ng,* 156 Mich App 779, 784; 402 NW2d 500 (1986). Not only did defense counsel fail to object, but also he acknowledged to the trial court that he had purposely allowed this testimony to come in without objection so that he could use the testimony to undermine the informant's credibility. Defendant may not now claim as error on appeal that evidence he purposely used in support of his defense theory was inadmissible. See *People v King,* 158 Mich App 672, 677; 405 NW2d 116 (1987); *People v Belanger,* 158 Mich App 522, 531; 405 NW2d 405 (1987), vacated on other grounds 432 Mich 880 (1989).

Finally, defendant claims that the prosecutor made an impermissible civic duty argument in rebuttal when he stated, "The law also takes into consideration the consequences of cocaine on the streets to people; what happens when youngsters ingest it through the noses, through the veins." Civic duty arguments are generally condemned because they inject issues into the trial that are broader than a defendant's guilt or innocence and because they encourage the jurors to suspend their own powers of judgment. *People v Crawford,* 187 Mich App 344, 354; 467 NW2d 818 (1991); *People v Wright (On Remand),* 99 Mich App 801, 809; 298 NW2d 857 (1980).

Here, defendant's objection to the prosecutor's statement set forth above was sustained, and, although defense counsel did not seek an immediate curative instruction, the trial court instructed the jury at the close of the prosecutor's rebuttal argument that it was "not to consider matters to which an objection was sustained or testimony or exhibits which were ordered stricken." Thus, the jury was effectively instructed to disregard the improper argument made by the prosecutor. Additionally, the prosecutor's remark was made in response to an argument by defense counsel that suggested to the jurors that their verdict could be based on their perception of fairness. See *People v Simon,* 174 Mich App 649, 655; 436 NW2d 695 (1989). Under these circumstances, defendant was not denied a fair trial by the prosecutor's rebuttal argument. See *People v Foster,* 175 Mich App 311, 317; 437 NW2d 395 (1989).

While not an issue in this case, we wish to express our concern with the statutorily mandated penalty of life imprisonment without parole for the delivery of 650 or more grams of cocaine. In many cases, including the instant case, this sentence may be proper. However, there are cases where the exercise of discretion by the trial court may be appropriate.

Affirmed.