# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KIRK WAYNE LABADIE,

Defendant-Appellant.

UNPUBLISHED
October 16, 2014

No.   318024
Chippewa Circuit Court
LC No.   12-000946-FH

Before:  MURPHY, C.J., and SAWYER and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Kirk Wayne Labadie, appeals by right his jury convictions for two counts of assault of a prison employee, MCL 750.197c, and malicious destruction of property of $200 or more but less than $1,000, MCL 750.377a(1)(c)(*i*), (b)(*ii*).  The trial court sentenced Labadie as a fourth habitual offender, MCL 769.12, to serve 3 years and 8 months to 30 years in prison for each conviction.  Because we conclude there were no errors warranting relief, we affirm.

Labadie contends the trial court erred when it admitted inadmissible hearsay at trial. Specifically, he maintains the trial court should have precluded Deputy Ashley Reid from testifying that Deputy Thomas Lawlor told him that Labadie threw a piece of broken telephone at him, which struck him near his eye.  Labadie further contends that Reid's testimony during the playing of a video from the jail's surveillance was improper.  Labadie's trial lawyer objected to Reid's testimony concerning Lawlor's statements on hearsay grounds, but did not otherwise object to Reid's testimony on due process grounds and did not object to Reid's descriptive testimony during the playing of the video on any grounds other than that the prosecution's questions were leading.  This Court reviews a trial court's decision to admit evidence for an abuse of discretion.  *People v Duncan*, 494 Mich 713, 722; 835 NW2d 399 (2013).  "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes."  *Id*. at 722-723.  This Court reviews unpreserved claims of error, including claims of constitutional error, for plain error affecting the defendant's substantial rights.  *People v Allan*, 299 Mich App 205, 210; 829 NW2d 319 (2013).

The prosecutor concedes that Reid's testimony about Lawlor's statements constituted inadmissible hearsay.  See *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). Nevertheless, any error in the admission of this testimony does not warrant relief because it is not " 'more probable than not' that a different outcome would have resulted."  *Id.* at 619.  Here,

-1-

there was overwhelming evidence that Labadie broke the phone located in his cell and threw a piece at Lawlor. Indeed, there was testimony that Labadie smashed the phone against the wall and Lawlor testified that Labadie threw a piece of the phone at him, which struck him near the eye and left a mark. Reid also personally observed on a monitor that Labadie threw something at Lawlor and saw Lawlor's injury. "Where the declarant himself testifies and is subject to cross-examination, the hearsay testimony is of less importance and less prejudicial." *Id.* at 621. Therefore, this claim of error—whether styled as a due process error or a hearsay error—does not warrant relief.

Labadie also argues the trial court should not have allowed the prosecutor to question Reid about the video as it was played for the jury. He maintains that Reid's testimony was unnecessary and comprised improper expert opinion testimony. In his testimony during the video's playback, Reid identified various individuals, described the physical layout of the cell block, and identified certain items (books and parts of the sanitizer bottle). Reid also explained why the video had poor quality.

Reid did not offer expert testimony; rather, he offered lay testimony "in the form of opinions or inferences", which were "rationally based" on his perception and "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." MRE 701. Reid was a supervisor at the jail and present when the incidents occurred. His testimony in conjunction with the video helped to clarify the identity of the individuals appearing in the video and the physical layout of the area at issue. Reid's testimony also served to explain defects in the video to eliminate any speculation by the jury of editing or tampering. As such, Reid's testimony was not objectionable. Similar to the use of photographs during a medical examiner's testimony, the video served to corroborate Reid's testimony. See *People v Mills*, 450 Mich 61, 76; 537 NW2d 909 (1995). In addition, MRE 901 requires "authentication or identification as a condition precedent to admissibility" which "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." "The burden rests with the party seeking to admit the evidence to show that the foundational prerequisites have been satisfied." *People v Burton*, 433 Mich 268, 304 n 16; 445 NW2d 133 (1989), overruled in part on other grounds *People v Barrett*, 480 Mich 125, 128; 747 NW2d 797 (2008). In accordance with MRE 901(b)(1), the testimony of a witness with knowledge that "a matter is what it is claimed to be" can be used for authentication or identification.

Labadie's trial lawyer also similarly questioned Reid about the video evidence in order to clarify the layout of the cell area. Generally, a defendant cannot rely on an error "to which the aggrieved party contributed by plan or negligence" when asking for relief. See *People v Gonzalez*, 256 Mich App 212, 224; 663 NW2d 499 (2003). And Labadie has not demonstrated that Reid's concurrent testimony constituted plain error in violation of due process. There is nothing to suggest that Reid's testimony improperly "filled in blanks" on the video or was inconsistent with what the jury was viewing. As such, Labadie cannot show that the alleged error prejudiced his trial, particularly given the recurrent and consistent testimony elicited from other witnesses.

Labadie next asserts that there was insufficient evidence to sustain his convictions. This Court reviews a challenge to the sufficiency of the evidence by reviewing the "record evidence de novo in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements were proved beyond a reasonable doubt." *People v Roper*, 286 Mich App 77, 83; 777 NW2d 483 (2009). When reviewing a challenge to the sufficiency of the evidence, this Court is not permitted to interfere with the role of the trier of fact in ascertaining "the weight of the evidence or the credibility of witnesses." *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012) (quotation marks and citation omitted). Instead, it is for the jury "to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

The prosecution charged Labadie with two counts of violating MCL 750.197c for the assaults on Reid and Lawlor. Here, it was undisputed that Labadie was in a "place of confinement" as defined by MCL 750.197c(2)(a) and that Reid and Lawlor met the statutory definition of an "employee" as correctional officers, MCL 750.197c(2)(b). Labadie only argues that there was no evidence that he assaulted Reid and Lawlor because he was separated from them by bars, which effectively precluded or impeded his ability to physically assault the officers. He also denied that he engaged in the behaviors claimed by the officers. Thus, the primary issue is whether there was evidence that Labadie assaulted the officers.

"A simple assault is either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery. A battery is the consummation of an assault. For assault and battery, intent is an element of the crime to be proved." *People v Terry*, 217 Mich App 660, 662; 553 NW2d 23 (1996) (citations omitted). "Intent may be inferred from all the facts and circumstances. Further, '[a] defendant's intent may be inferred from his acts. Because of the inherent difficulty of proving a defendant's state of mind, only minimal circumstantial evidence from which intent may be inferred need be presented." *People v Cameron*, 291 Mich App 599, 615; 806 NW2d 371 (2011) (citations omitted).

Reid testified that he saw Labadie on the control center monitors making an arm movement and attempting to destroy the telephone in his cell. He also testified that Deputy Scott Sheppard gave him a "dark grey piece of sharp plastic", which he retrieved from the floor in front of Labadie's cell. While in the control room, Reid also observed Labadie throw an unidentified object at Lawlor while Lawlor was in A-section and personally observed a "deep red mark" on Lawlor's cheekbone after the incident. Likewise, Deputy Frank Pingatore saw Lawlor's facial injury. Sheppard confirmed that he retrieved pieces of the telephone from near Labadie's cell and that Labadie was exhibiting "agitated" behavior. Lawlor recounted the escalating threats and saw Labadie slamming the telephone against the walls, which resulted in "breaking off the head of the phone piece." Labadie then threw pieces of the broken telephone at him, which went through the gaps in the cell bars, striking him in the face.

As for the evidence that Labadie assaulted Reid, Pingatore testified that he initially tried to serve Labadie his food tray, but Labadie was agitated, uncooperative, and threatening. Pingatore contacted Reid for assistance and when Reid tried to serve Labadie, Pingatore saw Labadie reach for Reid and attempt to slap the tray out of his hands, extending his arms through the cell bars and lunging. Pingatore testified that Labadie threw items toward Reid when he returned to the outer catwalk and that Labadie was yelling and threatening officers during these events. While in the control center, Lawlor also saw that Labadie lunged at Reid when Reid attempted to serve Labadie his food tray. Lawlor also saw him throw books out of the cell and smash a bottle. Reid testified similar to that of the other officers.

Although Labadie denied the incidents, "a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). And, viewing the evidence in the light most favorable to the prosecution, there was more than sufficient evidence to support the convictions of assault on Lawlor and Reid. Moreover, the prosecution did not have to prove that Labadie made physical contact with the officers in order to prove its case. A person violates MCL 750.197c when the person is "lawfully imprisoned" in a jail and "through the use of violence" or "threats of violence" assaults an employee. Hence, Labadie's verbal threats along with his attempts to make physical contact were sufficient to sustain his convictions.

Labadie also challenges the sufficiency of the evidence to sustain his conviction under MCL 750.377a(1)(c) for malicious destruction of property of over $200 but less than $1,000. Specifically, he contends that the telephone was broken before he was swinging and striking it against objects in his cell and that the prosecution failed to establish the value of the already broken telephone.

At trial, Labadie denied breaking the phone and asserted that it was already damaged before the events at issue. Notwithstanding Labadie's testimony, there was overwhelming evidence testimony and evidence that Labadie deliberately—that is, willfully—broke the telephone and that it was working at the time. Pingatore testified that Labadie used the telephone to call the control center earlier in the day to complain about the denial of his shower before staff temporarily "disabled" the telephone to permit Labadie time to "settle down." And an officer testified that they had to move Labadie from his cell after the incident because the phone now posed a safety risk. An officer testified that the value of the telephone was $270 and that it would cost an additional $120 in fees for installation.

It is difficult to dispute that Labadie's actions in repeatedly swinging the telephone handset against other stationary metal objects for a prolonged period constituted "willfull[]" and "malicious[]" conduct. Other than his claim to the contrary, Labadie presented no evidence that the telephone was defective or damaged other than by his own hand. In addition, Pingatore's testimony directly contradicted Labadie's contention that the phone was not functioning. The testimony concerning the value of the telephone was also undisputed. When evaluating a challenge to the sufficiency of the evidence, this Court will not interfere with a jury's assessment of the weight of evidence or the credibility of witnesses. *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013). Consequently, there was sufficient evidence to support Labadie's conviction under MCL 750.377a(1)(c).

Finally, Labadie contends the prosecutor erred by presenting a civic duty argument to the jury during closing arguments and that his lawyer's failure to object to the statement amounted to ineffective assistance. Because Labadie's lawyer did not object, we must review this claim for plain error. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008). Similarly, because the trial court did not hold a hearing on Labadie's claim that his lawyer was ineffective for failing to object, our review is limited to errors that are apparent on the record alone. *People v Lockett*, 295 Mich App 165, 186; 814 NW2d 295 (2012).

During closing arguments, the prosecutor noted that Labadie was classified at the highest security level:

> The defendant while he was at the Chippewa County Correctional Facility was classified as a level one; the highest level. He was placed in the segregated section, the most secure section of the facility. There was nothing else that the jail could do to contain the defendant. It's why the Legislature enacted this particular law. Because if there's 175 of them and four corrections officer[s] and the Legislature made a decision to say if you're in that environment and you assault someone who is unarmed having to manage that number of people in a very dangerous setting then you have to be held accountable.

At the conclusion of closing arguments, the trial court instructed the jury that the statements and arguments of the lawyers were not evidence.

The test for determining whether a prosecutor's statements amount to error warranting relief is whether the statement denied the defendant a "fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). When examining such a claim, we review the remarks in the context of a defendant's arguments and their relationship to the evidence admitted at trial. *People v Brown*, 267 Mich App 141, 152; 703 NW2d 230 (2005). "A prosecutor may not advocate that jurors convict a defendant as part of their civic duty[.]" *People v Ackerman*, 257 Mich App 434, 452; 669 NW2d 818 (2003) (citation omitted). Such arguments are improper because they "inject issues into the trial that are broader than a defendant's guilt or innocence and because they encourage the jurors to suspend their own powers of judgment." *People v Potra*, 191 Mich App 503, 512; 479 NW2d 707 (1991).

The majority of the prosecutor's comments pertaining to Labadie's incarceration, his security level and the levels of security at the jail, the number of inmates and corrections officers on duty were properly founded on facts in evidence or taken under judicial notice. Labadie contends that the prosecutor's reference to the Legislature's intent in enacting the statute to protect staff in the prison environment translates into an argument to convict premised on civic duty. But the prosecutor's mere reference to the Legislature's intent in enacting the statute cannot reasonably be construed as an appeal to civic duty. Even if the prosecutor's statement could be construed as a civic duty argument, any minimal prejudice was cured by the trial court's cautionary instruction that the lawyers' statements and arguments were not evidence. *People v Stimage*, 202 Mich App 28, 30; 507 NW2d 778 (1993). Finally, in light of the overwhelming evidence of guilt, we cannot conclude that this statement alone prejudiced Labadie. *Dobek*, 274 Mich App at 63. For the same reason, even if the decision not to object could be said to fall below an objective standard of reasonableness under prevailing professional norms, because the

-5-

comments were harmless, Labadie would not be entitled to relief on the alternate theory that his lawyer's failure to object amounted to ineffective assistance. *Unger*, 278 Mich App at 253.

There were no errors warranting relief.

Affirmed.

/s/ William B. Murphy
/s/ David H. Sawyer
/s/ Michael J. Kelly