# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

HENRY RICHARD HARPER,

        Defendant-Appellant.

UNPUBLISHED
June 11, 2015

No. 319942
Kent Circuit Court
LC No. 12-006969-FC

Before: HOEKSTRA, P.J., and O'CONNELL and MURRAY, JJ.

PER CURIAM.

Following a jury trial, defendant appeals as of right his convictions for first-degree criminal sexual conduct (CSC), MCL 750.520b(2)(b) (offender is 17 years of age or older and the victim is less than 13 years of age); and third-degree CSC, MCL 750.520d(1)(a) (the victim is at least 13 years of age and under 16 years of age). The trial court sentenced defendant as a habitual offender, fourth offense, MCL 769.12, to 25 to 50 years' imprisonment for his first-degree CSC conviction and a consecutive sentence of 20 to 50 years' imprisonment for his third-degree CSC conviction. Because defendant's claim of prosecutorial misconduct is without merit, we affirm defendant's convictions. However, because the consecutive sentencing in this case was not authorized by statute and we cannot discern from the record whether defendant was appropriately sentenced as a fourth-habitual offender, we remand for resentencing.

The victims in this case are half-brothers, D.H. and D.A. At the time of the sexual assaults, defendant was 40 years old, D.A. was 14 years old, and D.H. was 12 years old. Defendant leased property to the victim's family and, at some point, defendant obtained approval from the boys' mother to have D.A. and D.H. help him at his home. D.A. and D.H. went to defendant's house separately, at different times, ostensibly to help him. According to D.A., when he went to defendant's house, defendant forced him to urinate in defendant's mouth, and the next morning, when D.A. awoke at defendant's house, defendant had D.A.'s penis in his mouth. When D.H. subsequently went to defendant's house, he was also forced to urinate in defendant's mouth. D.H. and D.A. told their mother and stepfather about the incidents with defendant, and their mother called the police. Detective Kelli Braate subsequently interviewed defendant, who admitted that D.H. and D.A. urinated in his mouth. Despite his confession to Detective Braate, defendant testified at trial and denied the abuse. A jury convicted defendant as noted above. Defendant now appeals as of right.

On appeal, defendant first argues that the prosecutor committed misconduct during her rebuttal argument. In particular, taken in context, defendant challenges the following argument:

No one leaves the courthouse 100 percent convinced. You can't do it. I can't give you 100 percent of the puzzle pieces. I can't. No one ever will be able to. You will always leave with a doubt. But not a reasonable doubt when both the kids and the defendant on tape say it happened. And the defendant tells you up there, well I lied to the detective but I only lied about what I thought my friends would believe. Oh, yeah and I told my mom too when I didn't have to tell my mom. Really, if you're going to believe that, then that's - - that's ignoring all of this. That is not reasonable. That is not common sense.

*When you go to the coffee shop after this and you go with your friends, your significant other, or your spouse and hey you're on jury duty, what happened? Did he do it? The bottom line is yes. He did. It all fit. You can't look at them and say well you know, the kids said it happened and this young boy, who had nothing to gain, said it happened, and he confessed on tape but then he just said he didn't do it so we found him not guilty.*

According to defendant, these remarks by the prosecutor were an improper appeal to the jurors' sympathies and sense of civic duty.

Defendant failed to object to these remarks at trial, meaning that our review of this issue is for plain error affecting defendant's substantial rights. *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). When reviewing a claim of prosecutorial misconduct, we consider the record as a whole and evaluate a prosecutor's remarks in context, considering the particular facts of the case, the evidence admitted at trial, and arguments by defense counsel. *Id.* at 330. "Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). A prosecutor may, for example, comment on the credibility of witnesses during closing arguments, particularly when "the question of the defendant's guilt depends on which witnesses the jury believes." *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). Further, a prosecutor may use emotional language and may urge the jury to exercise its common sense when evaluating the evidence. *People v Ackerman*, 257 Mich App 434, 452-454; 669 NW2d 818 (2003). A prosecutor may not, however, appeal to the jury to sympathize with the victim or urge the jury to "convict as part of its civic duty or on the basis of its prejudices." *Unger*, 278 Mich App at 237. Such arguments are "generally condemned because they inject issues into the trial that are broader than a defendant's guilt or innocence and because they encourage the jurors to suspend their own powers of judgment." *People v Potra*, 191 Mich App 503, 512; 479 NW2d 707 (1991).

In this case, contrary to defendant's claims, the challenged argument was not in any way an appeal to the jury to suspend its judgment and decide the case based on sympathy or as part of its civic duty regardless of the evidence. See *People v Matuszak*, 263 Mich App 42, 56; 687 NW2d 342 (2004). Rather, the prosecutor was simply responding to defendant's closing argument, which focused on the assertion that there was a lack of evidence, and in particular a lack of physical evidence, to corroborate the victims' testimony and to show guilt beyond a

reasonable doubt. Defense counsel emphasized inconsistencies in the victims' testimony and suggested that the victims invented their story because perhaps they wanted defendant, an "odd, older" man, out of their lives. In response, based on the evidence presented at trial, the prosecutor permissibly argued that the jury could not "reasonably" ignore the victims' testimony or defendant's confession and simply find that defendant's statement that "he didn't do it" was enough to render a not guilty verdict. This argument by the prosecutor, including in context the reference to the everyday discussions the jurors would later have with family members and friends about the case, amounted to nothing more than a permissible assertion that the jury should not disregard "common sense" when evaluating the evidence and witness credibility. See generally *People v Lawton*, 196 Mich App 341, 355; 492 NW2d 810 (1992). Further, it was certainly permissible for the prosecutor to comment on the victims' credibility by arguing that the victims had "nothing to gain" by coming forward with their allegations against defendant, especially given that the evidence showed that one of the victims feared that his family would lose their housing if he did not comply with defendant's demands. See *Thomas*, 260 Mich App at 455. In short, we see nothing remotely improper in the prosecutor's rebuttal arguments.[1] Moreover, the remarks challenged by defendant were brief and any conceivable prejudicial effect could have been cured with a jury instruction, meaning defendant has certainly failed to show plain error affecting his substantial rights. See *Callon*, 256 Mich App at 329.

Next, defendant argues that the trial court erred when it imposed consecutive sentences for his convictions because his sexual abuse of D.A. and D.H. did not "aris[e] from the same transaction" within the meaning of MCL 750.520b(3). Defendant failed to object to the imposition of consecutive sentences.[2] As a result, our review is for plain error affecting defendant's substantial rights. *People v Kimble*, 470 Mich 305, 312; 684 NW2d 669 (2004). Under the plain error standard, defendant must show that a plain error occurred, that the error affected his substantial rights, and that the "error resulted in the conviction of an actually innocent defendant or that the error seriously affected the fairness, integrity or public reputation of judicial proceedings." *Id.* (citation and internal quotation marks omitted).

"In Michigan, concurrent sentencing is the norm, and a consecutive sentence may be imposed only if specifically authorized by statute." *People v Ryan*, 295 Mich App 388, 401; 819 NW2d 55 (2012) (citation and quotation marks omitted). Pursuant to MCL 750.520b(3), when a

---

[1] Defendant also contends that defense counsel rendered ineffective assistance by failing to object to the prosecutor's remarks. This argument need not be considered because defendant failed to include it in his statement of the questions presented on appeal. MCR 7.212(C)(5); *People v Anderson*, 284 Mich App 11, 16; 772 NW2d 792 (2009). In any event, given the propriety of the prosecutor's arguments, any objection by defense counsel would have been futile, and counsel cannot be considered ineffective for failing to make a futile objection. *People v Ericksen*, 288 Mich App 192, 205; 793 NW2d 120 (2010).

[2] Defendant includes within his questions presented on appeal an assertion that counsel rendered ineffective assistance by failing to object to consecutive sentencing. Defendant abandoned this argument, however, by failing to adequately brief the issue. See *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714 (2009).

defendant is convicted of first-degree CSC, the trial court may order consecutive sentencing "for any other criminal offense arising from the same transaction." To decide whether criminal offenses rose from the "same transaction" within the meaning of MCL 750.520b(3), the sentencing court should determine whether the acts "grew out of a continuous time sequence" and whether the acts "sprang one from the other and had a connective relationship that was more than incidental." *Ryan*, 295 Mich App at 403. See also *People v Brown*, 495 Mich 962, 963; 843 NW2d 743 (2014). For example, in *Ryan*, 295 Mich App at 403, the Court determined that two criminal acts of sexual conduct arose from the "same transaction" when one sexual act "was immediately followed" by another.

In comparison, in this case, the sexual assaults plainly have some connective relationship insofar as D.H. and D.A. were brothers, defendant obtained their mother's permission for them to assist him at his home, and the sexual assaults occurred during time that the boys were supposed to be helping defendant. Despite this connective relationship, the acts were nonetheless not part of the "same transaction" because the assaults did not grow out of a "continuous sequence of time." That is, the boys were not assaulted at the same time and they were not even both present at defendant's house at the time their respective assaults occurred. Rather, D.A. went to defendant's home, he was assaulted by defendant, and then he left to go to his girlfriend's house. Sometime later, perhaps even on a different day,[3] defendant picked-up D.H. at his home, brought D.H. to defendant's house, and assaulted D.H. On these facts, the break between when D.A. left defendant's home and when defendant assaulted D.H. disrupted the time and flow of events such that it cannot be concluded that the two separate assaults constituted part of the "same transaction." See *id.* at 403-404.

Thus, the trial court plainly erred when it sentenced defendant to consecutive sentences. This error also clearly affected defendant's substantial rights because it resulted in consecutive sentencing not authorized by law, the effect of which is that defendant will spend an extra 20 years in prison. See generally *People v Kimble*, 470 Mich 305, 312-313; 684 NW2d 669 (2004). Further, this deprivation of defendant's liberty for a period longer than that authorized by law seriously affects the fairness, integrity and public reputation of judicial proceedings. See *id.* at 313. Consequently, defendant is entitled to resentencing.

Also related to the issue of sentencing, defendant next argues that the trial court erred when it classified defendant as a fourth-offense habitual offender.[4] Relevant to this assertion, if a person "has been convicted of any combination of 3 or more felonies or attempts to commit felonies" and then that person commits a subsequent felony, he or she shall be sentenced as a fourth-habitual offender under MCL 769.12. For purposes of the Code of Criminal Procedure,

---

[3] The record is somewhat unclear in regards to the length of the break between when D.A. left defendant's home and when defendant picked-up D.H. It is undisputed, however, that the boys went to defendant's home separately and that their time at his house did not overlap.

[4] In the alternative, defendant contends his counsel rendered ineffective assistance by failing to object to this error. However, by failing to adequately brief the issue of his counsel's effectiveness, defendant has abandoned this claim. See *Payne*, 285 Mich App at 195.

MCL 760.1 *et seq.*, and the habitual offender provisions therein, the term "felony" refers to "a violation of a penal law of this state for which the offender, upon conviction may be punished by death or by imprisonment of more than 1 year or an offense expressly designated by law to be a felony." MCL 761.1(g); *People v Smith*, 423 Mich 427, 442-445; 378 NW2d 384 (1985).

In defendant's case, it is uncontested that defendant has two prior felony convictions. The issue of contention is whether the third offense relied on by the trial court, a 1993 conviction which involved non-sufficient funds for a check, constituted a "felony" or a "misdemeanor" for purposes of defendant's habitual offender status. In particular, in 1993, a first or second offense conviction for nonsufficient funds of a check over $50 but under $200 was "a misdemeanor, punishable by imprisonment for not more than 1 year, or a fine of not more than $500.00, or both." MCL 750.131(3)(b), as amended by 1984 PA 277. In contrast, if the amount involved was $200 or more, the offense was a felony, publishable by imprisonment of not more than 13 months, or a by a fine of not more than $500, or both. MCL 750.131(3)(c), as amended by 1984 PA 277. Consequently, whether defendant's 1993 conviction for non-sufficient funds constitutes a "felony" or "misdemeanor" depends on whether the amount involved was more or less than $200. See MCL 761.1(g). Because there may be merit to defendant's argument and we cannot decide this issue on the record presented, we leave it to the trial court to assess this issue during resentencing on remand.

In particular, before trial, defendant was informed of the prosecution's intention to seek enhanced sentencing under MCL 769.12, and the habitual offender notice specified that one of the felonies supporting sentencing under MCL 769.12 was defendant's conviction for "attempt NSF check *over* $200." Defendant's Presentence Investigation Report (PSIR) and Sentencing Information Report (SIR) also plainly indicate that defendant's habitual status is that of a "4th or subsequent." Defendant made no challenge to the PSIR in the court below; nor did he object to being sentenced as a fourth-habitual offender. And, in fact, after the jury returned its verdict, defense counsel responded affirmatively on the record when asked: "Does [defendant] admit that he was convicted of an offense of non-sufficient check *over* $200[?]" However, at odds with defense counsel's admission in this respect is the information regarding defendant's 1993 conviction in his adult criminal history contained in his PSIR. Specifically, according to the PSIR, defendant entered into a plea agreement on May 13, 1993, whereby he pleaded guilty to non-sufficient funds *under* $200, meaning that defendant's PSIR lists only two prior felonies.

Information in the PSIR is presumed to be accurate, *People v Waclawski*, 286 Mich App 634, 689; 780 NW2d 321 (2009), and consequently defendant contends he is entitled to resentencing because the PSIR does not support the conclusion that he has three prior felonies. In contrast, to definitively resolve this issue, the prosecution asks that we take judicial notice of documents outside the record pertaining to defendant's 1993 conviction. On appeal, however, we consider the original record, MCR 7.210(A)(1), and parties may not expand the record beyond that contained in the courts below. See *People v Powell*, 235 Mich App 557, 561 n 4; 599 NW2d 499 (1999). Nonetheless, given the conflicting information in the lower court record and defendant's failure to object below, we decline to decide the propriety of sentencing defendant as a fourth-habitual offender based solely on the PSIR's reference to nonsufficient funds under $200. Rather, we find it appropriate to allow the trial court to consider this issue on remand at resentencing and, in particular, to consider any evidence either party might produce to establish defendant's habitual offender status and the accuracy of his criminal history in the

-5-

PSIR. See MCR 7.216(A)(5); see also *Waclawski*, 286 Mich App at 690. From any evidence offered by the parties, the trial court should determine whether defendant is a third or fourth habitual offender. The trial court should then sentence defendant accordingly and correct any discrepancies or inaccuracies in the PSIR.

Next, defendant makes the unpreserved claim that the trial court erred when it imposed $700 in court costs at sentencing because the costs were not specifically authorized by statute. Defendant makes this argument in reliance on *People v Cunningham*, 496 Mich 145; 852 NW2d 118 (2014), wherein the Court concluded that, under MCL 761.1k(b)(ii), the trial court could not impose court courts unless specifically authorized by statute. Since the decision in *Cunningham*, however, MCL 761.1k(b) has been amended. See 2014 PA 352. This amendment expressly applies retroactively to fines and costs imposed before June 18, 2014, which thus includes defendant's costs imposed on October 31, 2013. See *People v Konopka*, ___ Mich App ___; ___ NW2d ___ (2015), slip op at 6. Notably, the amended version of MCL 769.1k(1)(b)(*iii*) provides for an award of certain costs that are *not* independently authorized by the statute for the sentencing offense. See *Konopka*, slip op at 8. Defendant does not address the statutory amendment; nor does he challenge the reasonableness of the costs imposed. See *id.* In light of the adoption of the amended version of MCL 769.1k(1)(b), and its application to the instant case, defendant has not shown that the trial court's imposition of costs amounted to plain error.

Finally, defendant argues that on remand he should be resentenced before a different judge. Defendant failed to include this issue within his statement of his questions presented and thus it need not be considered. See *People v Brown*, 239 Mich App 735, 748; 610 NW2d 234 (2000); MCR 7.212(C)(5). Moreover, defendant's argument in this respect is insufficiently briefed and thus abandoned. See *Payne*, 285 Mich App at 195. Indeed, defendant's total argument regarding purported judicial bias amounts to the undeveloped assertion that the trial court opined during sentencing that defendant had "set a new low." But, considered in context, this arguably hostile remark was an opinion formed from the evidence during the trial process, which, as the trial court explained, included evidence that defendant had young boys urinate in his mouth and that they complied for fearing of losing their housing, a fact scenario which the trial court found "absolutely outrageous." This type of opinion, formed from the evidence presented, does not evince a "deep-seated favoritism or antagonism" to suggest that the trial court is incapable of fair judgment. See *People v Jackson*, 292 Mich App 583, 598; 808 NW2d 541 (2011). We thus decline defendant's request for resentencing before a different judge.

Defendant's convictions are affirmed, but we remand for resentencing consistent with this opinion. We do not retain jurisdiction.

/s/ Joel P. Hoekstra
/s/ Peter D. O'Connell