PEOPLE v BART (ON REMAND)

Docket No. 191403. Submitted September 5, 1996, at Detroit. Decided November 8, 1996, at 9:10 A.M.

Steven W. Bart was convicted by a jury in the Detroit Recorder's Court, Kathleen MacDonald, J., of armed robbery and assault with intent to commit great bodily harm less than murder. On motion by the defendant for a directed verdict of acquittal or a new trial, Judge MacDonald granted directed verdicts of acquittal of armed robbery and assault with intent to commit great bodily harm less than murder and entered a judgment of conviction of larceny from a person. Judge Richard P. Hathaway sentenced the defendant to five years of probation with the first six months in jail. On appeal by the prosecution, the Court of Appeals, SAWYER, P.J., and WEAVER and H. R. GAGE, JJ., in an unpublished memorandum opinion, issued September 3, 1993 (Docket No. 144483), reversed the directed verdicts of acquittal and remanded the case for entry of a judgment consistent with the jury verdicts of guilty of armed robbery and assault with intent to commit great bodily harm less than murder. On remand, the case was assigned to Judge John H. Gillis, Jr., who denied the defendant's motion to have the case reassigned to Judge MacDonald. Judge Gillis sentenced the defendant to concurrent prison terms of four to fifteen years for the armed robbery conviction and four to ten years for the conviction of assault with intent to commit great bodily harm less than murder. On appeal by the defendant of Judge Gillis' denial of the motion to have the case reassigned to Judge MacDonald, the Court of Appeals on March 22, 1995, issued an order reversing Judge Gillis' order denying reassignment of the case and remanded the case with instructions that Judge MacDonald be assigned to the case, that she hear the motion for a new trial, and that she resentence the defendant should the motion for a new trial be denied. Judge MacDonald granted the motion for a new trial. The prosecution sought, but was denied, leave to appeal in the Court of Appeals the grant of the motion for a new trial. The Supreme Court, in lieu of granting the prosecution leave to appeal, remanded the case to the Court of Appeals for consideration as on leave granted. 450 Mich 944 (1995).

On remand, the Court of Appeals *held*:

MCR 6.431(B) provides that, on motion by a defendant, a trial court may order a new trial on any ground that would support appellate reversal of the conviction or because it believes that the verdict has resulted in a miscarriage of justice. The court rule requires the trial court to state orally on the record or in a writing made part of the record its reasons for granting or denying a new trial.

In this case, Judge MacDonald abused her discretion in granting a new trial to the defendant on the basis of findings that the prosecution did not present sufficient evidence to support the jury's verdicts, that the victim embellished his testimony, that the circumstantial evidence was weak, and that the jury may have been prejudiced by learning that a codefendant in a separate trial had been convicted of armed robbery and assault with intent to commit great bodily harm less than murder. The reasons given by Judge MacDonald provide insufficient justification for overturning the verdicts of the jury, whose findings must be accorded great deference in light of its special role in the judicial system. The record lends no support to the first three reasons given by Judge McDonald, and, with respect to the last reason, it was the defense that made reference to the codefendant's conviction during its cross-examination of the victim and during its closing argument.

Reversed and remanded for sentencing for conviction of armed robbery and assault with intent to commit great bodily harm less than murder.

CRIMINAL LAW — NEW TRIAL.

A trial court may grant a defendant's motion for a new trial following a jury verdict of guilty on any ground that would support appellate reversal of the conviction or because it believes that the verdict has resulted in a miscarriage of justice; the trial court must approach the motion with great trepidation and reserve, with all presumptions running against a grant of a new trial, in light of the great deference that must be accorded to the jury because of its special role in the judicial system (MCR 6.431[B]).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *John D. O'Hair*, Prosecuting Attorney, and *Timothy A. Baughman*, Chief of Research, Training, and Appeals.

*Mary E. MacDougall*, for the defendant on appeal.

ON REMAND

Before: YOUNG, P.J., and TAYLOR and R. C. LIVO,* JJ.

TAYLOR, J. This case is before us pursuant to a Supreme Court order requiring us to consider this prosecutor's appeal as on leave granted. 450 Mich 944 (1995). We reverse.

Defendant was charged with armed robbery and assault with intent to commit great bodily harm less than murder. The trial was held on June 25 and 26 of 1991 with Judge Kathleen MacDonald presiding. The victim testified that he was sitting in his convertible car with the top down when codefendant, Dominic Vasques, approached him and made a compliment about his car. After the codefendant left, defendant approached the victim and made a similar comment. Vasques then returned, and defendant asked the victim what the make of his radio was. The victim told Vasques and defendant that he had to leave, and he started his car. Defendant reached in, turned the car off, and told the victim he was not going anywhere. Vasques reached in and grabbed some compact discs and cassette tapes from the back seat. Defendant told the victim to hand over his radio and disc player. When the victim refused, Vasques hit him over the head with a Pepsi bottle. Defendant had a brown beer bottle in his hand. The victim said he did not see defendant hit him although he found some brown beer bottle glass along with Pepsi bottle glass in his car the next day and he said he had been hit in two places. The victim passed out for a moment and saw defendant and Vasques running when he regained

---

* Circuit judge, sitting on the Court of Appeals by assignment.

consciousness. A police officer testified that he observed two males run away from a convertible and then drive in reverse through an alley. The officer stopped the vehicle and found some compact discs and cassette tapes in the car.

Defense counsel did not move for a directed verdict when the prosecution rested its case. After closing arguments, the trial court, sua sponte, advised the attorneys that it intended to give instructions regarding unarmed robbery and larceny from a person as lesser included offenses of armed robbery and regarding aggravated assault and felonious assault as lesser included offenses of assault with intent to do great bodily harm. The jury found defendant guilty of armed robbery and assault with intent to do great bodily harm less than murder. After the jury announced its verdict, the court asked defense counsel if he wanted the jury polled. Defense counsel answered in the affirmative. After the polling of the jury was completed and the jury was discharged, the court, sua sponte, stated as follows to defense counsel: "You don't have a motion for me?" Defense counsel then said that he wanted to move for a new trial and for judgment notwithstanding the verdict. The court said it would accept a motion for a directed verdict of acquittal as well as a motion for a new trial.

On August 16, 1991, the court entertained oral argument regarding the motion for a directed verdict of acquittal and a new trial. The court granted a directed verdict of acquittal, stating:

I was present at this trial and it absolutely amazed me that the jury brought back this verdict. There was never any testimony that this defendant committed any actual assault or robbery. The most that could have been said to support

this charge that he was an aider and abettor and in fact, that must be proven if the People could have shown that at or be proven if the People could have shown that at or before [codefendant] Dominic Vasques's commission of the crime defendant either specifically intended to commit armed robbery or had the knowledge that Dominic Vasques had the specific intent to commit armed robbery as well as an assault.

These are specific intent crimes and there was no testimony to support that. The motion for directed verdict of acquittal on those charges is granted and rather than grant the motion for a new trial, it is this Court's opinion that there was sufficient evidence to support a conviction for larceny from a person in that there was testimony to support that there was property taken from this person and that the defendant was present and had knowledge of those tapes. There were some cassette tapes I believe that were taken.

Therefore I would reduce the charge to larceny from a person and refer the defendant back to the probation department with a strong recommendation from this Court that he be placed on probation for one year. Certainly I have probably over stepped my bounds to recommend this sentence but I was present at this trial and I found it to be a miscarriage of justice. This defendant has never been in trouble before. These are serious charges that were not supported with sufficient evidence in this Court's opinion.

Thereafter, defendant was sentenced to five years' probation, with the first six months in jail, for the conviction of larceny from a person.

The trial court's ruling did not comply with MCR 6.419(C), which provides:

If the court grants a directed verdict of acquittal after the jury has returned a verdict, it *must also* conditionally rule on any motion for a new trial by determining whether it would grant the motion if the directed verdict of acquittal is vacated or reversed. [Emphasis added.]

The prosecution appealed the court's order that granted a directed verdict of acquittal. On September 3, 1993, this Court unanimously reversed in an unpublished memorandum opinion that stated in full:

Defendant was found guilty by a jury of armed robbery, MCL 750.529; MSA 28.797, and assault with intent to do great bodily harm less than murder, MCL 750.84; MSA 28.279. The trial court subsequently ordered directed verdicts of acquittal and entered a conviction for the lesser included offense of larceny from a person, MCL 750.357; MSA 28.589. Plaintiff now appeals as of right. MCL 770.12; MSA 28.1109. We reverse the directed verdicts of acquittal and remand for entry of judgment consistent with the jury verdicts.

When viewed in a light most favorable to the prosecution, the evidence was sufficient to enable a rational trier of fact to find that the essential elements of the charged offenses were proven beyond a reasonable doubt. *People v Hampton*, 407 Mich 354; 285 NW2d 284 (1979); *People v Heard*, 178 Mich App 692, 703; 444 NW2d 542 (1989). Accordingly, the court erred when it directed verdicts of acquittal.

Reversed and remanded for entry of judgments of conviction consistent with the jury's verdicts.[1]

Pursuant to this Court's remand, the case returned to the lower court for sentencing. The case was assigned to Judge John H. Gillis, Jr. Defendant moved to have further proceedings conducted before Judge MacDonald. Judge Gillis denied the motion, said the motion for a new trial was moot, and sentenced defendant to concurrent terms of four to fifteen years

---

[1] If the trial court had complied with MCR 6.419(C) and provisionally ruled on the motion for a new trial, this Court could have considered the propriety of the court's granting of a new trial in the first appeal by the prosecutor, which this Court resolved in 1993. The court's failure to comply with MCR 6.419(C) has thus lengthened the appeal process in this case by three years.

for the armed robbery conviction and four to ten years for the conviction of assault with intent to commit great bodily harm less than murder. Defendant then filed a motion for a new trial with Judge Mac-Donald. In denying the motion, on November 16, 1994, Judge MacDonald held that she could not overturn Judge Gillis' decision but added:

> I still am of the opinion that this defendant was wrongly charged and wrongly convicted, and I remember. I remember the complainant's testimony and how incredible it was. However, the Court of Appeals didn't see it the same way and apparently Judge Gillis didn't look at it either.[2]

Defendant appealed the denial of his motion to have further proceedings held by Judge MacDonald. On March 22, 1995, this Court issued an order granting defendant's appeal, stating:

> The Court orders, pursuant to MCR 7.205(D)(2) and 7.216(A)(7), that the December 14, 1993 order of the Recorder's Court for the City of Detroit in this cause, denying plaintiff's [sic] motion for reassignment, after remand following this Court's decision in Docket No. 144483, to the original trial judge, is REVERSED, and the cause is REMANDED with instructions to reassign the matter to the original trial judge, who has specifically indicated her availability and who remains an active member of the trial bench. For rea-

---

[2] The court's comment regarding the complainant's testimony being incredible and the Court of Appeals not seeing it the same way demonstrates the trial court's incorrect understanding of the applicable standard that is to be applied in considering a directed verdict of acquittal. In considering a motion for a directed verdict of acquittal, a court must review the evidence in a light most favorable to the prosecution. *People v Jaffray*, 445 Mich 287, 296; 519 NW2d 108 (1994). Viewing the complainant's testimony in a light most favorable to the prosecution obviously includes assuming the testimony was credible.

sons explored in *People v McCline*, 442 Mich. 127, 131, 133 [499 NW2d 341] (1993), defendant is entitled both to be sentenced by the trial judge, and to have his post-conviction motion for new trial predicated on the great weight of the evidence, *People v Johnson*, 397 Mich 686 [246 NW2d 836] (1976), adjudicated by the trial judge, the only judicial officer with knowledge and appreciation of the relevant credibility of witnesses and other extra-record aspects of the trial. *People v Pierce*, 158 Mich App 113, 115 [404 NW2d 230] (1987); *People v Clemons*, 407 Mich 939 (1979). *Accord:* MCR 6.440(C), 8.111(C) and (D). This Court notes that, by virtue of her ruling on defendant's alternative motion for directed verdict of acquittal, reversed by this Court's prior opinion, the trial judge never addressed defendant's motion for new trial. *People v McCline, supra*, 442 Mich at 134. On remand, the original trial judge shall adjudicate defendant's motion for new trial, and, if that motion is denied, the trial judge shall then proceed to sentencing.

Pursuant to this Court's remand, on June 20, 1995, Judge MacDonald granted defendant's motion for a new trial, stating:

I think in this case its a very difficult decision. I think as I have stated before to support the seriousness of the charges against this defendant that I do not believe that the People presented sufficient evidence to support that verdict and in particular the only witness was the complaining witness and he did embellish his testimony. I granted the directed verdict the first time because I thought it was an unfair and perverse verdict in this case and based on the standards that I have and I can look at the credibility of the complaining witness and the totality of the proofs, I think that the circumstantial evidence in this case was weak to say the least. There was a lot of doubt. I think the fact that the jury knew that the other defendant had been convicted of the same offenses may have prejudiced them and looking at the total proofs I think that the defendant's motion should be and is granted.

The prosecution appealed the trial court's order granting defendant a new trial. This Court denied the prosecution's application for leave to appeal over Judge MARKMAN's dissent in an order issued on August 23, 1995. In dissenting from the order denying leave to appeal, Judge MARKMAN stated:

> The trial court's authority to grant a new trial, while a critically important judicial safeguard, is one to be exercised with "great caution, mindful of the special role accorded jurors under our constitutional system of justice." *People v Herbert*, 444 Mich 466, 477; 511 NW2d 654 (1993). I believe that a serious question is raised about the propriety of the exercise of such authority where, as here, the court has originally rejected a motion for a new trial, instead granting a motion for a directed verdict and affirmatively substituting a conviction for larceny in lieu of a conviction for armed robbery, and later (following a decision by this Court overturning the trial court's decision to grant a directed verdict) granted a subsequent motion for a new trial on the basis of the lack of credibility of the victim-witness. Had the court held this view of the victim-witness' credibility at the time of its consideration of the original motion for a directed verdict or a new trial, it is difficult to understand why it did not grant the new trial motion at that time and why it did find that defendant was guilty of larceny. I am further persuaded that the instant motion for leave to appeal should be granted by virtue of the absence of any references by the trial court to specific parts of the victim-witness' testimony which it found to be "incredible" in sustaining an armed robbery conviction but adequately credible to sustain a larceny conviction.

The prosecution appealed to the Supreme Court this Court's denial of its application for leave to appeal. The Supreme Court issued an order on December 19, 1995, stating as follows: "In lieu of granting leave to appeal, the case is remanded to the

Court of Appeals for consideration as on leave granted. MCR 7.302(F)(1)." 450 Mich 944 (1995).

Having decided in 1993 that the trial court erred in granting defendant directed verdicts of acquittal, we now must decide whether the trial court abused its discretion in granting defendant's motion for a new trial. We find that it did.

MCL 770.1; MSA 28.1098 states:

> The judge of a court in which the trial of an offense is held may grant a new trial to the defendant, for any cause for which by law a new trial may be granted, or when it appears to the court that justice has not been done, and on the terms or conditions as the court directs.

MCR 6.431(B) states:

> On the defendant's motion, the court may order a new trial on any ground that would support appellate reversal of the conviction or because it believes that the verdict has resulted in a miscarriage of justice. The court must state its reasons for granting or denying a new trial orally on the record or in a written ruling made part of the record.

MCR 6.431 took effect on October 1, 1989. The note accompanying this rule states:

> Subrule (B) substantially modifies the statutory standards for granting a new trial set forth in MCL 770.1; MSA 28.1098 and applied by the courts. See *People v Hampton*, 407 Mich 354, 372-373 (1979). The statute provides that the trial court may grant a new trial (1) "for any cause for which by law a new trial may be granted," or (2) "when it appears to the court that justice has not been done . . . ." Although the court rule repeats in stylistically revised language the first standard, it substitutes a new second standard: "Because [the trial court] believes the verdict has resulted in a miscarriage of justice." What substantive difference, if any,

exists between the new standard and the former standard is
left to be addressed by case law.

In accordance with the use note, this Court has held
that MCR 6.431 supersedes the statute. *People v
McEwan*, 214 Mich App 690, 693, n 1; 543 NW2d 367
(1995). The Court cited MCR 6.001(E), which states
that the rules of criminal procedure supersede any
statutory procedure pertaining to and inconsistent
with a procedure provided by a rule in chapter six of
the Michigan Court Rules. In *McEwan*, this Court
held that a trial court may not grant a motion for a
new trial on its own initiative. The trial court here
successfully avoided the reach of *McEwan* by inviting
defense counsel to bring such a motion.

In *Herbert, supra* at 477, in a four-to-two decision,
the Court held:

> [A] judge may grant a new trial after finding the testi-
> mony of witnesses for the prevailing party not to be credi-
> ble. We caution, however, that this exercise of judicial
> power is to be undertaken with great caution, mindful of
> the special role accorded jurors under our constitutional
> system of justice.

Our review requires us to examine the reasons given
by the trial court for granting a new trial in order to
determine if the court abused its discretion.[3] In
August 1991, the trial court said there was sufficient
evidence to support a larceny from a person convic-
tion. In November 1994, the court said the complain-

---

[3] See *People v Gallagher*, 116 Mich App 283, 291; 323 NW2d 366 (1982)
(the most logical way to test a trial court's decision to grant a new trial is
to determine whether the reasons assigned are legally recognized ones
and then to determine whether these reasons are supported by any rea-
sonable interpretation of the record).

ant's testimony was incredible. Finally, in June 1995, the court said (1) the people did not present sufficient evidence to support the verdict, (2) the victim embellished his testimony, (3) the circumstantial evidence was weak—there was a lot of doubt, and (4) the jury may have been prejudiced by the fact that it learned the codefendant had been convicted of armed robbery and assault with intent to commit great bodily harm less than murder. Considering the trial court's comments in total and the entire record, and as explained hereafter, we find that the trial court's reasons for granting a new trial were insufficient to justify overturning the jurors' verdicts given the special role accorded jurors under our constitutional system of justice. *Herbert, supra* at 477.

With respect to the deference to be accorded a jury's finding, the *Herbert* majority is somewhat Delphic. In developing a standard, it is essential to note that juries are, and have been, the central fact-finding vehicle of Anglo-American law. Their virtues in truthseeking have been acknowledged for centuries. In H. Care, English Liberties, pp 205, 208-209, written in 1680 (and cited in 2 Few, In Defense of Trial by Jury, p 278, published in 1993 by the American Jury Trial Foundation), it is stated of juries:

> Now let any man of sense consider, whether this method be not more proper for bolting out the truth, for finding out the guilty, and preserving the innocent, than if the whole decision were left to the examination of a judge, or two or three, whose interests, passion, haste, or multiplicity of business may easily betray them into error.

Justice CHARLES D. LONG of our Supreme Court, in *McRae v Grand Rapids L & D R Co*, 93 Mich 399, 401; 53 NW 561 (1892), said:

> [W]hatever its origin, the right of trial by jury of twelve men became fixed centuries ago in the common law, and . . . wherever the Anglo-Saxon tongue was spoken, and in many other countries, this right came to be regarded as the great bulwark of the liberty of the citizen. . . . When separated from the mother country, we regarded it as a birthright, and have ever been jealous of any attempted innovations upon the system.

Finally, giving emphasis to the extraordinary caution with which innovations in this venerable system should be approached, is the statement of Justice George Sutherland, speaking for the United States Supreme Court in *Dimick v Schiedt*, 293 US 474, 486; 55 S Ct 296; 79 L Ed 603 (1934):

> Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with utmost care.

Thus, when sitting as a thirteenth juror, the hurdle a judge must clear to overrule a jury is unquestionably among the highest in our law. It is to be approached by the court with great trepidation and reserve, with all presumptions running against its invocation.

With these principles in mind, we find the reasons cited by the trial court for granting a new trial inadequate. The court's June 1995 statement that the people did not present sufficient evidence to support the verdict indicates the court disagrees with this Court's 1993 finding to the contrary. Moreover, the trial court's November 1994 statement that the victim's testimony was incredible is contradicted by the court's own earlier finding that the evidence justified a conviction of larceny from a person (a ten-year felony, MCL 750.357; MSA 28.589). As Judge MARKMAN stated

in dissenting from this Court's earlier denial of the prosecutor's application for leave to appeal:

> Had the court held this view of the victim-witness's credibility at the time of its consideration of the original motion for a directed verdict or a new trial, it is difficult to understand why it did not grant the new trial motion at that time and why it did find that defendant was guilty of larceny.

Further, the court's June 1995 statements that the circumstantial evidence was weak and there was a lot of doubt also are again contradicted by the court's November 1994 statement that the evidence supported a conviction of larceny from a person. Finally, the court's June 1995 ruling made reference to the court's view that the victim embellished his testimony. No explanation of the nature of the embellishment was made. We can find none. There is no serious question that the victim was hit over the head with one or more bottles and robbed of some musical compact discs and cassettes. On its face, this qualifies as armed robbery because the difference between larceny from a person and armed robbery is the element of force, *People v LeFlore*, 96 Mich App 557, 561; 293 NW2d 628 (1980), and a dangerous weapon or an article used as a dangerous weapon such as the bottle(s) in this case. MCL 750.529; MSA 28.797. These are the salient and dispositive facts with which the jury had to work. The only element lacking clarity was whether defendant actually hit the victim. On this point, there was no possible embellishment by the victim as he candidly, and indeed helpfully from defendant's perspective, said he could not say that defendant had hit him. From this, embellishment cannot be made.

The trial court also stated that it was granting a new trial because the jury may have been prejudiced because it knew the codefendant had been convicted of the same offenses with which defendant was charged. Generally, admission of evidence of a codefendant's conviction at a separate trial is error. *People v Lytal*, 415 Mich 603, 612; 329 NW2d 738 (1982). However, in the case at bar, evidence of the codefendant's convictions was introduced by defendant during cross-examination of the victim. During his closing argument, defense counsel argued that there was no evidence defendant hit the victim or took anything and that the codefendant "was convicted of both charges, he paid because he did the crime." Given the fact that defense counsel brought this information out to support defendant's theory of the case, it is not a proper ground for granting defendant a new trial.[4] *People v Potra*, 191 Mich App 503, 512; 479 NW2d 707 (1991). A defendant cannot have it both ways, or as trenchantly stated in *People v Hardin*, 421 Mich 296, 322; 365 NW2d 101 (1984), counsel may not harbor error to be used as an appellate parachute in the event of jury failure.

We find the reasons asserted by the court for using its thirteenth-juror status to grant a new trial to be entirely insufficient. Accordingly, the court abused its discretion in ordering a new trial.

Reversed and remanded for sentencing in accordance with the jury's verdict. Because it appears defendant was granted bond pending appeal, we

---

[4] We further note that utilizing a sound trial strategy that eventually fails does not constitute ineffective assistance of counsel. *People v Strong*, 143 Mich App 442, 449; 372 NW2d 335 (1985); *People v La Vearn*, 448 Mich 207, 216; 528 NW2d 721 (1995).

revoke the bond. We hereby authorize the prosecutor or any law enforcement officer of appropriate jurisdiction to immediately take defendant into custody. MCR 7.216(A)(7).