*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

DOMINIQUE ARNETT RAMSEY, JR.,

        Defendant-Appellee.

UNPUBLISHED
July 2, 2019

No. 334614
Saginaw Circuit Court
LC No. 15-041847-FC

ON REMAND

Before: RONAYNE KRAUSE, P.J., and FORT HOOD and O'BRIEN, JJ.

PER CURIAM.

This case returns to us on remand from the Michigan Supreme Court. Our Supreme Court, in lieu of granting defendant's application for leave to appeal, vacated the portion of our judgment reversing the trial court's decision to grant defendant a new trial based on its conclusion that the verdict was against the great weight of the evidence, and remanded to this Court for consideration as on reconsideration granted. For the reasons set forth in this opinion, we reverse the trial court's March 3, 2016 opinion and order granting defendant a new trial and remand for sentencing proceedings and entry of a judgment of sentence consistent with the jury's verdict.

## I. FACTS

The facts of this case were set forth in our first opinion and will be restated here:

> This case arises out of the homicide of Humberto Casas, who was gunned down in the early afternoon hours of Father's Day, June 21, 2015, at the intersection of Cumberland and Holland in Saginaw, Michigan. Defendant and Travis Sammons were jointly tried on charges of open murder, MCL 750.316, conspiracy to commit murder, MCL 750.157a, possession of a firearm by a felon, MCL 750.224f, and three counts of possession of a firearm during the commission of a felony, MCL 750.227b. The prosecution's theory at trial was that defendant drove the vehicle carrying Sammons, who fired the shots at Casas.

-1-

* * *

Subsequently, the jury returned a verdict finding defendant and Sammons guilty of the conspiracy to commit first-degree murder charge, but not guilty on all other charges. Defendant then renewed his motion for a directed verdict, also seeking a new trial, arguing that no evidence established that he was part of an agreement to participate in Casas's murder. The trial court thereafter granted defendant's motion. The thrust of the trial court's ruling was that the record evidence was devoid of any reliable direct or circumstantial evidence establishing that defendant was the driver of the vehicle carrying Sammons. The trial court also "conditionally" granted defendant's motion for a new trial, concluding that the jury's verdict was against the great weight of the evidence, resulting in a miscarriage of justice.

The prosecution filed a delayed application for leave to appeal and a motion for peremptory reversal in this Court, both of which were denied. *People v Ramsey*, unpublished order of the Court of Appeals, issued December 29, 2016 (Docket No. 334614). The prosecution then sought leave to appeal in the Michigan Supreme Court, which remanded the case to this Court for consideration as on leave granted. *People v Ramsey*, 500 Mich 980; 893 NW2d 342 (2017). [*People v Ramsey,* unpublished per curiam opinion of the Court of Appeals, issued April 24, 2018 (Docket No. 334614), pp 1-2.]

After an extensive and thorough review of the record and a detailed analysis, we concluded that "the record evidence, viewed in the light most favorable to the prosecution, amply supported the prosecution's circumstantial case against defendant, as well as the jury's ultimate verdict finding defendant guilty of conspiring with Sammons to commit first-degree premeditated murder." *Ramsey*, unpub op at 3-11. Thus, we concluded that the trial court erred in granting defendant's motion for a directed verdict of acquittal. *Id*. at 12. We likewise determined that the trial court abused its discretion in conditionally granting defendant's motion for a new trial where the record evidence did not preponderate against the jury's verdict to the extent that a miscarriage of justice has occurred." *Id*. Presiding Judge Ronayne Krause concurred in the result only.

After we issued our first opinion in this case, defendant filed a motion seeking reconsideration of our judgment and we denied his motion. *People v Ramsey*, unpublished order of the Court of Appeals, entered June 4, 2018 (Docket No. 334614). Defendant subsequently filed an application for leave to appeal in the Michigan Supreme Court, and in lieu of granting leave to appeal, our Supreme Court vacated the part of our judgment reversing the trial court's "March 3, 2016 decision to grant a new trial on grounds that the verdict was against the great weight of the evidence," and remanded this case to us as on reconsideration granted. Specifically, in its remand order, our Supreme Court stated, in pertinent part:

The Court of Appeals held that the trial court had abused its discretion in granting a new trial "for the same reasons" as it erred in deciding that the evidence was insufficient to convict the defendant of conspiracy, and found that "the record evidence did not preponderate against the jury's verdict to the extent that a

-2-

miscarriage of justice has occurred." Though there may be sufficient evidence to convict when the evidence is viewed in the light most favorable to the prosecutor, that does not render a decision on the great weight of the evidence an abuse of discretion. See *People v Lemmon*, 456 Mich 625, 633-635; 576 NW2d 129 (1998). On remand, the Court of Appeals shall determine whether the decision to grant a new trial was within the range of principled outcomes in light of the trial court's finding that the jury verdict resulted in a miscarriage of justice. MCR 6.431(B). In all other respects, leave to appeal is DENIED, because we are not persuaded that the remaining question presented should be reviewed by this Court. [*People v Ramsey*, 501 Mich 941; 921 NW2d 538 (2019).]

In an order entered April 4, 2019, we remanded this case to the trial court with the following instructions:

> The Court, on its own motion, orders this matter REMANDED to the trial court for the trial court judge's further explanation of its reasons for conditionally granting defendant's motion for a new trial after defendant was convicted by a jury of conspiracy to commit first-degree murder, MCL 750.157a; MCL 750.316; MCR 6.419(F). Within 35 days after the entry of this order, the trial court judge shall enter and file with the Clerk of this Court a written opinion that further explains the basis for the conclusion that the jury's guilty verdict was against the great weight of the evidence and resulted in a miscarriage of justice. MCR 2.641(B). [*People v Ramsey*, unpublished order of the Court of Appeals, entered April 4, 2019 (Docket No. 334614).]

We issued this order because in the trial court's March 3, 2016 opinion and order granting defendant's motion for a new trial, the trial court simply stated that a new trial was necessary "because the jury's verdict on the conspiracy charge was against the great weight of the evidence presented and resulted in a miscarriage of justice." In our April 4, 2019 order, we also directed the parties to file supplemental briefs "addressing whether, in light of the trial court's further articulation of its reasons, the conditional grant of a new trial amounted to an abuse of discretion." Defendant subsequently moved for reconsideration of this order and we denied his motion. *People v Ramsey*, unpublished order of the Court of Appeals, entered May 2, 2019 (Docket No. 334614). On May 9, 2019, the trial court filed its opinion on remand with this Court, detailing its reasoning for conditionally granting defendant's motion for a new trial. Specifically, the trial court stated, in pertinent part:

> For the reasons previously outlined in its March 3, 2016 written opinion, and those stated on the record at the March 3, 2016 hearing, this Court determined that Defendant was entitled to a directed verdict of acquittal because the evidence presented at trial was insufficient as a matter of law to permit a rational trier of fact to find beyond a reasonable doubt that Defendant committed the offense of conspiracy to commit first-degree premeditated murder. Those same reasons also supported the Court's finding that the jury's verdict was against the great weight of the evidence and resulted in a miscarriage of justice. Therefore, in accordance with MCR 6.419(E) and MCR 6.431(B), this Court conditionally granted Defendant's Motion for a New Trial.

After correctly citing the applicable standard of review with regard to a motion for a new trial, the trial court continued:

> This Court did not base its conditional ruling to grant Defendant's Motion for a New Trial on an evaluation of witness credibility. This was not a situation where the Court decided that Defendant should be granted a new trial because of conflicting witness testimony. Instead, this Court determined that the witness testimony presented, even when accepted as true and combined with other evidence at trial, did not establish beyond a reasonable doubt that Defendant committed the offense of conspiracy to commit first-degree premeditated murder. See *People v Lane*, 308 Mich App 38, 57; 862 NW2d 446 (2014).

The trial court went on to state the applicable law with regard to establishing the crime of conspiracy, and observed, in pertinent part:

> Here, there was no evidence of an express agreement between Defendant and Sammons to commit the crime of first-degree premeditated murder. Instead, the prosecution's theory was that Defendant's participation in the conspiracy could be inferred from evidence that he acted as the getaway driver at the time of the shooting. However, the prosecution presented no physical evidence (i.e. DNA, footprints, tire tracks, or ballistics) placing Defendant at the scene of the crime when the shooting took place. Also, while three eyewitnesses to the shooting testified for the prosecution, no one identified Defendant as a participant in the crime. One of the eyewitnesses, Dyjuan Jones, ("Jones"), positively identified Sammons as the shooter during a police station show-up hours after the crime, but Jones failed to identify Defendant. Jones described the driver as a very large male weighing between 280 and 320 pounds with a long beard. This description did not match Defendant, who weighed approximately 140 pounds and had minimal facial hair when he was arrested following the crime. The other two eyewitnesses to the shooting could not provide a detailed description of the driver. Thus, the trial record contains no direct evidence showing that Defendant conspired to commit the crime of first-degree premeditated murder by acting as the getaway driver.

While recognizing that the prosecution could prove its case with circumstantial evidence, the trial court nonetheless stated that "the circumstantial evidence presented did not establish beyond a reasonable doubt that Defendant participated in a conspiracy to commit first-degree premeditated murder by acting as the getaway driver."

> The prosecution's circumstantial case against Defendant consisted of a video montage, comprised of surveillance video footage from various locations, and the evidence that Defendant was apprehended, along with Sammons, in a silver Jeep Commander approximately fifteen to twenty minutes after the shooting. In the video, the Jeep Commander was seen stopping in the driveway of a residence on Baldwin Street, where individuals exited and entered the vehicle, between the time of the shooting and the time of the traffic stop during which Defendant and

Sammons were apprehended. The vehicle's occupants were not clearly visible at any time on the video.

The video evidence, coupled with the eyewitness testimony, tended to support the prosecution's theory that the Jeep Commander that Defendant and Sammons were apprehended in after the crime was the vehicle that was used during the murder. However, the video did not support the prosecution's theory that Defendant was continuously driving the Jeep Commander from the time of the murder up until the time that he and Sammons were apprehended after the crime. The occupants of the vehicle cannot be seen on the video. Further, unknown individuals appeared to exit and enter the vehicle while it was stopped on Baldwin between the time of the victim's murder and the traffic stop during which Defendant and Sammons were apprehended. From the video, it is impossible to determine whether Defendant and Sammons were both in the vehicle before it arrived at the residence on Baldwin.

Any reliance upon one's ability to discern from the video who did or did not exit and/or enter the vehicle in the driveway is pure speculation and conjecture. While the jury may be permitted to operate in such a fashion, we, who have taken an oath to uphold the law, cannot.

The presentation of the video, together with Jones' description of the driver, and the lack of any other direct evidence implicating Defendant, all created reasonable doubt as to whether Defendant was the individual that was driving the Jeep Commander at the time of the murder. Apart from its theory that Defendant participated in a conspiracy to commit first-degree murder by acting as the getaway driver, the prosecution presented no evidence to show that Defendant conspired with Sammons or anyone else to commit murder. There was no other evidence of a conspiracy through Defendants' words, actions, or conduct. At best, there was evidence of an agreement between Defendant and Sammons to be together in the Jeep Commander after the homicide occurred. Thus, on this record, the Court found the jury's decision to convict defendant of the crime of conspiracy to commit first-degree premeditated murder to be against the great weight of the evidence.

As a former police officer and a former prosecutor, this Court firmly believes in holding accountable those who commit violent crimes. However, as judge, my role is no longer to be an advocate, but rather an impartial arbiter. And to apply the law to the facts presented (or not presented) and to render an opinion. After presiding over the trial, the Court found that the evidence introduced, when viewed in a light most favorable to the prosecution, did not justify a rational factfinder in finding Defendant guilty of the offense of conspiracy to commit first-degree premeditated murder beyond a reasonable doubt.

In accordance with our Supreme Court's directive, we now consider whether the trial court's decision "was within the range of principled outcomes in light of the trial court's finding that the jury verdict resulted in a miscarriage of justice." *Ramsey*, 503 Mich at 941.

## II. STANDARD OF REVIEW

As our Supreme Court recently recognized, this Court should review a trial court's decision in response to a motion seeking a new trial for an abuse of discretion. *People v Johnson*, 502 Mich 541, 564; 918 NW2d 676 (2018). The trial court's decision amounts to an abuse of discretion if it falls outside the range of reasonable and principled outcomes. *Id.*

## III. ANALYSIS

The jury convicted defendant of conspiracy to commit first-degree murder. MCL 750.157a provides, in pertinent part:

> Any person who conspires together with 1 or more persons to commit an offense prohibited by law, or to commit a legal act in an illegal manner is guilty of the crime of conspiracy.

In *People v Jackson*, 292 Mich App 583, 588; 808 NW2d 541 (2011), this Court recognized:

> A conviction of first-degree premeditated murder requires evidence that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate. Premeditation and deliberation require sufficient time to allow the defendant to take a second look.

> A criminal conspiracy is a partnership in criminal purposes, under which two or more individuals voluntarily agree to effectuate the commission of a criminal offense. The individuals must specifically intend to combine to pursue the criminal objective, and the offense is complete upon the formation of the agreement. The intent, including knowledge of the intent, must be shared by the individuals. Thus, there must be proof showing that the parties specifically intended to further, promote, advance, or pursue an unlawful objective. *Direct proof of a conspiracy is not required; rather, proof may be derived from the circumstances, acts, and conduct of the parties.* [Citations and quotation marks omitted; emphasis added.]

MCR 6.431(B) provides:

> On the defendant's motion, the court may order a new trial on any ground that would support appellate reversal of the conviction or because it believes that the verdict has resulted in a miscarriage of justice. The court must state its reasons for granting or denying a new trial orally on the record or in a written ruling made a part of the record.[1]

---

[1] The statutory counterpart of MCR 6.431(B), MCL 770.1 states that "[t]he judge of a court in which the trial of an offense is held may grant a new trial to the defendant, for any cause for

In *Lemmon*, 456 Mich at 627, our Supreme Court clarified that when considering a motion for a new trial, the trial court judge is precluded from participating in the proceedings as a "thirteenth juror" and is permitted to grant a new trial "only if the evidence preponderates heavily against the verdict" to the extent it would be a miscarriage of justice to allow the verdict to stand." In *Lemmon*, our Supreme Court took the opportunity to clarify the differences between the standard for granting a new trial and for directing a verdict of acquittal. *Id*. at 633.

> Under statute, as well as the court rule, the operative principles regarding new trial motions are that the court "may," in the "interest of justice" or to prevent a "miscarriage of justice," grant the defendant's motion for a new trial. In [*People v Herbert*, 444 Mich 466; 511 NW2d 654 (1993)],[2] we noted that, in addition to preventing injustice, a new trial may be granted if the verdict is against the great weight of the evidence. [*Lemmon*, 456 Mich at 634-635.]

In stating clearly that the trial court may not act as the thirteen juror, our Supreme Court noted the well-settled principle that "[i]t is the province of the jury to determine questions of fact and assess the credibility of witnesses." *Id*. at 637. Our Supreme Court also clarified that, pursuant to MCL 770.1 and MCR 6.431(B), " 'a new trial based upon the weight of the evidence should be granted only where the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result.' " *Lemmon*, 456 Mich at 642, quoting *State v Ladabouche*, 146 Vt 279, 285; 502 A2d 852 (1985).

> We align ourselves with those appellate courts holding that, absent exceptional circumstances, issues of witness credibility are for the jury, and the trial court may not substitute its view of the credibility "for the constitutionally guaranteed jury determination thereof." [*Sloan v Kramer-Orloff Co*, 371 Mich 403, 411; 124 NW2d 255 (1963)]. We reiterate the observation in *Anderson v Conterio*, 303 Mich 75, 79; 5 NW2d 572 (1942), that, when testimony is in direct conflict and testimony supporting the verdict has been impeached, if "it cannot be said as a matter of law that the testimony thus impeached was deprived of all probative value or that the jury could not believe it," the credibility of witnesses is for the jury. [*Lemmon*, 456 Mich at 642-643.]

The *Lemmon* Court further noted that "conflicting testimony" is generally not grounds for a new trial, and observed that federal courts have carved out an exception to the general rule that the trial court may not invade the province of the jury. *Id*. at 643. Whether such an exception applies can be discerned by consideration of the following tests: if the "testimony contradicts

---

which by law a new trial may be granted, or when it appears to the court that justice has not been done, and on the terms or conditions as the court directs."

[2] In *Lemmon*, our Supreme Court clarified, that, contrary to what it had stated in its earlier opinion in Herbert, a trial court may not act as a thirteenth juror and overturn a jury verdict simply because the trial court disagrees with the witness testimony in favor of the prevailing party. *Lemmon*, 456 Mich at 636, 648.

indisputable physical facts or laws" or "if the testimony is simply "patently incredible" or in defiance of "physical realities[,]" or the testimony is so " inherently plausible" that a reasonable juror could not believe it, or the testimony of a witness has been greatly undermined and the case is fraught with "uncertainties and discrepancies." *Id*. at 643-644 (citations and quotation marks omitted). In evaluating a motion for a new trial, the trial court may not base its decision on its disagreement with the verdict of the jury or its rejection of the testimony of a witness or witnesses. *Id*. at 644.

> Rather, a trial judge must determine if one of the tests applies so that it would seriously undermine the credibility of a witness' testimony and, if so, is there "a real concern that an innocent person may have been convicted" or that "it would be a manifest injustice" to allow the guilty verdict to stand. [*United States v Arrington*, 757 F2d 1484, 1486 (CA 4, 1985)]. If the "evidence is nearly balanced, or is such that different minds would naturally and fairly come to different conclusions," the judge may not disturb the jury findings although his judgment might incline him the other way. [*State v Kringstad*, 353 NW2d 302, 307 (ND, 1984)]. Any "real concern" that an innocent person has been convicted would arise "only if the credible trial evidence weighs more heavily in [the defendant's] favor than against it." [*United States v Polin,* 824 F Supp 542, 551 (ED Pa, 1993)].

In our first opinion in this case, we extensively reviewed the evidence that the prosecution presented at trial:

> At trial, the prosecution called DyJuan Jones, who was an eyewitness to the shooting. Jones was travelling home from church with his mother, Felicia Little, sitting in the backseat of her vehicle, when he heard what he initially thought were firecrackers. As relevant to this appeal, Jones testified that the driver of the vehicle carrying the individual that shot and killed Casas was between 280 and 320 pounds. Jones observed the individual sitting in the vehicle from 25 to 30 feet away. According to Jones, the driver of the Jeep was wearing a "big, white T-shirt[,]" and had a long beard which extended to his collar. Jones identified the vehicle carrying the shooter that killed Casas as a silver Jeep. When he visited the Saginaw Police Department in the early evening hours following the shooting, Jones, after observing defendant and Sammons held individually in separate interview rooms, was able to identify Sammons as the individual that shot and killed Casas, but he did not identify defendant as the driver of the Jeep. Sergeant David Rivard with the Michigan State Police also testified that Sammons and defendant were placed in separate interview rooms at the Saginaw Police Department, and that Jones positively identified Sammons as the shooter, but that Jones did not identify defendant.

> Little testified that between 1:15 and 1:30 p.m. on June 21, 2015, she was driving northbound on Cumberland Street, approaching the intersection of Cumberland and Holland, when she saw a "body" come from behind a grey truck and a "guy" walking up the street. According to Little, the grey truck and a burgundy truck were parked in a nearby parking lot. Specifically, Little testified

that she saw someone "come on the sidewalk and start shooting." However, according to Little, all she saw was "a body . . . and a hand and fire." Afraid for her safety and that of her son, Little sped away, so she did not see the shooter or the driver of the truck that the shooter came from behind, and therefore could not identify the shooter or the driver.

Rosei Watkins came upon the shooting as she and her eight-year-old grandson were driving home from visiting a local cemetery. Watkins observed three men on the side of the road, and she saw one of the men shoot one of the other men, while the third man got back in the driver's seat of a silver or grey Jeep. Specifically, Watkins described the Jeep as "box[y]." Given the circumstances of the shooting, Watkins was afraid for her grandson's safety, and quickly tried to manoeuver her vehicle away from the shooting, therefore she did not see the driver's face. According to Watkins, the driver of the Jeep "wasn't a real tall person[,]" and he was "in between" being of stocky and/or heavy and thin build. According to Watkins, the driver was of a "normal" build, and was not heavyset or in the range of 300 pounds. When questioned if the driver of the Jeep had a long beard, Watkins stated, "I don't remember seeing it." Watkins was not able to identify the driver of the Jeep or the shooter in a photographic lineup provided by the police on June 23, 2015.

Officer Bradley Holp with the City of Saginaw Police Department attended the scene of the shooting at approximately 1:15 p.m. after receiving a dispatch call about a shooting. When he arrived at the scene of the shooting, Officer Holp observed Casas lying in the street with multiple gunshot wounds, one to the head, and noted that he was in possession of two cellular telephones and crack cocaine. Officer Tyler Poirer of the Bridgeport Police Department was working the day shift on June 21, 2015, and sometime between 1:15 and 1:35 p.m., as he was travelling northbound on Dixie Highway, he observed a silver Jeep Commander, and he noted that "based off some incident earlier that day, [he] had obtained some information regarding this car." Noticing that the silver Jeep had a defective brake light, Officer Poirer pulled the vehicle over, and defendant was driving the Jeep, and Sammons was his passenger. Officer Poirer recalled that defendant was wearing a white T-shirt. Officer Poirer also noticed during a pat-down search that Sammons's hands were "sweating heavily." When Officer Poirer searched defendant, Sammons and the silver Jeep, his search did not yield any firearms or drugs. Officer Poirer also described defendant's demeanor as normal. Officer Poirer also testified on recross-examination that defendant was not 320 pounds, and that he did not have a long beard that extended to his chin.

The prosecution also introduced as evidence a surveillance video mosaic, comprised of 11 different surveillance videos from varying locations, detailing the movements of the Jeep Commander in the time period contemporaneous with [Casas's] murder to the time that it was stopped by Officer Poirer. This evidence was admitted during the testimony of Detective Robert Scott with the Michigan State Police during the prosecution's case-in-chief. Specifically, the video commenced at the scene of Casas's murder, 1501 Cumberland Street, and shows

the Jeep Commander entering the driveway at 1:21 p.m. where the homicide occurred. At one point during the surveillance video, at 1:26 p.m., the Jeep Commander stopped at 2573 Baldwin, a residential home, where it remained for 3 minutes and 12 seconds. The surveillance video shows 2573 Baldwin from about 400 yards away. Detective Scott attended 2573 Baldwin on June 26, 2015, and that is where Sammons was apprehended for his involvement in Casas's murder. Detective Scott was questioned extensively regarding the portion of the surveillance video mosaic at 2573 Baldwin. While the Jeep Commander was parked at 2573 Baldwin, Detective Scott noted that the passenger exited the vehicle and went into the house and then can no longer be seen in front of the house, and that no other vehicles pull into the driveway of the home at that time. [*Ramsey*, unpub op at 4-5.]

We also closely reviewed the surveillance video mosaic that was presented to the jury, and restated salient portions of the detailed cross-examination of Detective Scott by defendant's counsel and Sammons's counsel pertaining to the surveillance video mosaic, which, for purposes of brevity we will not restate here. *Ramsey*, unpub op at 5-11.

As the trial court noted, we are aware that the surveillance video mosaic did not clearly identify the occupants of the Jeep Commander. We also acknowledge that the witnesses to the homicide did not expressly identify defendant as the driver of the Jeep Commander. However, in our first opinion in this case, we noted that the prosecution presented the following circumstantial evidence implicating defendant in this crime:

> While Jones may not have identified defendant, and his description of the driver of the Jeep Commander did not comport with defendant's physical appearance on the day of the murder, notably, Jones identified the vehicle carrying Casas's assailants to be a silver Jeep. Additionally, Watkins joined in the identification of the silver Jeep as transporting the individuals who carried out Casas's murder, while Little also recalled seeing a silver truck at the scene of the murder. Significantly, Jones clearly identified Sammons as the shooter who fired multiple shots at Casas, and in a very short time period following the murder, defendant and Sammons were apprehended, driving together with Sammons as the passenger, in the same Jeep Commander that the witnesses described as being at the scene of the shooting. Moreover, Watkins's description of the driver of the Jeep was consistent with defendant's physical appearance.

In its written opinion on remand, the trial court stated that, in its view, the prosecution had not proven its case beyond a reasonable doubt. Such is not the standard for weighing a defendant's request for a new trial. Instead, for a motion for a new trial to be properly granted pursuant to MCL 770.1 and MCR 6.431(B), the trial court must (1) discern whether one of the tests enumerated in *Lemmon* applies to the extent that it "would seriously undermine the credibility of a witness' testimony," and (2) consider whether a "real concern" exists "that an innocent person may have been convicted" or if it "would be a manifest injustice" to not disturb the jury's guilty verdict. *Lemmon*, 456 Mich at 644, quoting *United States v Sanchez*, 969 F2d 1409, 1414 (CA 2, 1992). Having considered the entire record, while we are mindful of the appellate deference to be afforded to the trial court's decision to grant a new trial, *id*. at 638;

-10-

*People v Orlewicz*, 293 Mich App 96, 100; 809 NW2d 194 (2011), remanded on other grounds 493 Mich 916 (2012), we conclude the trial court abused its discretion in granting defendant's motion for a new trial because the trial court's reasoning for doing so did not comport with our Supreme Court's instructions in *Lemmon*.

Specifically, our close review of the record demonstrates that the testimony of the witnesses at trial did not contradict indisputable physical facts or laws, nor was it patently incredible or in defiance of physical realities, it was not inherently implausible to the extent that a reasonable juror could not believe it, and it was not seriously impeached or undermined. *Lemmon*, 456 Mich at 643-644. See *People v Gaines*, 306 Mich App 289, 297; 856 NW2d 222 (2014) (holding that the trial court properly denied the defendant's motion for a new trial because "[n]one of the exceptional circumstances that would warrant a conclusion that the finding was against the great weight of the evidence, . . . are present in this case."). Similarly, in *People v Musser*, 259 Mich App 215, 219; 637 NW2d 800 (2003), this Court held that the jury's verdict was not against the great weight of the evidence because it was supported by the complainant's testimony, and the defendant's arguments challenging the verdict did not concern indisputable facts, but inconsistencies in the testimony of various witnesses at trial and the evidence presented to the jury.

> Although the complainant's credibility was challenged, . . . we cannot say that the complainant's testimony was deprived of all probative value or that the jury could not have believed it, or that the testimony contradicted indisputable physical facts or defied physical realities. [*Id*. at 219.]

The jury was presented with the prosecution's evidence, and it heard the testimony of all of the prosecution's witnesses. It had ample opportunity to consider any weaknesses, frailties or conflicts in the evidence. Defense counsel also was provided the opportunity to vigorously cross-examine all of the prosecution witnesses and undermine its evidence. While the prosecution's case against defendant was based entirely on circumstantial evidence, this is not an unusual occurrence in the context of a criminal trial, and this case is simply not one that we can characterize as fraught with "uncertainties and discrepancies." *Lemmon*, 456 Mich at 644 (citation and quotation marks omitted). We have closely reviewed the record and while we acknowledge the circumstantial nature of the evidence against defendant, as well as the conflicts in the evidence and the discrepancies in the descriptions of the driver of the Jeep Commander by the witnesses to the homicide, we are well satisfied that the evidence does not "preponderate so heavily against the verdict that it would be a miscarriage of justice to let the verdict stand." *People v McCray*, 245 Mich App 631, 638; 630 NW2d 633 (2001).[3]

---

[3] In *McCray*, the defendant argued that a new trial should be granted because the descriptions of the assailant by the witnesses at trial "varied, and none of the descriptions exactly fit [the] defendant." *Id*. at 638. Acknowledging that "there were discrepancies among witness descriptions of the assailant and defendant's appearance," this Court upheld the trial court's denial of defendant's motion for a new trial. *Id*. at 637, 638.

In *Lemmon*, our Supreme Court cautioned trial courts of this state from interfering with the venerable function of the jury as the fact-finder during the truth-seeking process of a criminal trial. See *Lemmon*, 456 Mich at 637 (recognizing "[i]t is the province of the jury to determine questions of fact and assess the credibility of witnesses.") The *Lemmon* Court also cited Justice TAYLOR'S opinion in *People v Bart* (*On Remand*), 220 Mich App 1, 12; 558 NW2d 449 (1996), in which he stated that " 'the special role accorded jurors under our constitutional system of justice' has been acknowledged for centuries." *Lemmon*, 456 Mich at 639. In our opinion, the trial court's decision in this case did not respect the inviolate role that the jury holds as the finder of fact in a criminal trial. As the *Lemmon* Court noted, while the trial court's duty to "protect the process" includes important duties to both the defendant and the public, the trial court must also respect the "constitutionally guaranteed role of the jury as determiner of disputed facts." *Id*. at 647. Therefore, because the trial abused its discretion in granting defendant's motion for a new trial, its March 3, 2016 order is reversed.

## IV. CONCLUSION

We affirm defendant's conviction and remand for sentencing proceedings and entry of a judgment of sentence consistent with the jury's verdict. We do not retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Karen M. Fort Hood
/s/ Colleen A. O'Brien

-12-